IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 3:06-cr-148 |
| | ) | (Varlan/Shirley) |
| KEITH O'BRYAN SMITH, | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. The case is before the Court on the defendant's Motion to Suppress [Doc. 12]. The Court held an evidentiary hearing on this motion on January 3, 2007. Present on behalf of the government was Assistant United States Attorney Tracee Plowell. Present representing the defendant Keith O'Bryan Smith was attorney A. Philip Lomonaco. The defendant was also present.

On November 7, 2006, the defendant was charged in a one-count Indictment [Doc. 1] with knowingly, intentionally and without authority possessing with intent to distribute five grams or more of crack cocaine, in violation of 21 U.S.C. § 841. The defendant subsequently filed the present motion [Doc. 12], seeking to suppress the evidence resulting from the search conducted following his arrest.

## II. SUMMARY OF TESTIMONY

The first person to testify at the suppression hearing was Officer Kenneth Todd Gilreath, who has been a member of the Knoxville Police Department since 1993. Officer Gilreath testified that he has worked in some undercover roles and has been assigned to the Violent Crimes Task Force for the last nine years. In his role with the task force, he serves as a liaison officer to the Federal Bureau of Investigation. Officer Gilreath has received training in several types of tactical investigations, including investigations involving drugs, gangs, and money laundering. He estimated that he has made thousands of arrests during his career, with the vast majority of those arrests being narcotics related.

Officer Gilreath testified that the 2500 block of Martin Luther King Avenue in East Knoxville is a high-crime area. He testified that the north side of the street consists of two buildings, each consisting of four smaller business. Officer Gilreath described the area as "an open-air drug market" where several shootings had occurred, and as a place where he has executed numerous search warrants and made several arrests.

Officer Gilreath testified that the business located at 2525 Martin Luther King Avenue was formerly known as "The MLK Games and Thangs," and was formerly operated by a man by the name of Arthur Dionne Robinson, who is now in federal prison for conspiracy to distribute crack cocaine. Officer Gilreath testified that the business had been closed for an extended period of time after Mr. Robinson was taken into custody. Prior to that, the location had been used as a "gang house" for a gang known as the Vice Lords.

Officer Gilreath testified that on November 7, 2006, he was traveling in an unmarked car with Special Agent Mickey Nocera of the FBI on Martin Luther King Avenue. He testified that

they were going to check on some addresses and follow up on some intelligence that he had received in another case. As they passed the 2500 block of Martin Luther King Avenue, Officer Gilreath noticed that the business located at 2525 Martin Luther King Avenue was open again and that people were coming and going out of the business. Officer Gilreath testified that he mentioned to Special Agent Nocera that he had heard that an individual had opened the business back up and was selling marijuana over the counter. Officer Gilreath told Special Agent Nocera that if they had a chance, they should swing back by later to perform a business check.

After the officers had checked out the addresses, they returned to 2500 block of Martin Luther King Avenue at approximately 4:00 p.m. and again saw people coming in and going out of the business located at 2525 Martin Luther King Avenue. Officer Gilreath drove to a supermarket about a block west of the area, where he noticed a marked police car in the parking lot. He asked the uniformed officer, Officer McAllister, if he would accompany Gilreath and Nocera, who were both in plainclothes, to conduct a business check.[1]

The three officers returned to the 2500 block of Martin Luther King Avenue. Officer Gilreath described the business located at 2525 as a glass-front business with dark tinted windows that prevented him from seeing inside the building. A sign outside of the business indicated that it was a game room. There were three vehicles parked in front of the establishment at the time. Officer Gilreath testified that it appeared to be an ongoing public business, as the business was located in a commercial zone and had people coming and going out of the door.

---

[1] Officer Gilreath described a "business check" as a check to see who was operating the business and whether they were operating the business legally, that is, with a business license.

The business located at 2525 is at the west end of one of the buildings on the north side of the 2500 block. Adjacent to the 2525 business is a small alley/driveway and a chain link fence. The other building located on the 2500 block is on the opposite side of the alley and fence. Officer Gilreath testified that he parked in the front of Bates Barber Shop, which is located in this other building and is adjacent to the alley. Officer Gilreath testified that he went around the fence, followed by Special Agent Nocera and Officer McAllister, and approached the business located at 2525. Officer Gilreath testified that as he started to push the door open and step in the business, he noticed a "huge plume of marijuana smoke" coming out of the door. He stated that he was then immediately confronted with the defendant, who was coming across the threshold of the door. Officer Gilreath testified that the defendant appeared to be surprised. Officer Gilreath looked at the defendant's hands and observed a small bag of marijuana in his right hand. He testified that the defendant was holding the bag like a baseball, with three of his fingers and thumb wrapped loosely around the bag. He recalled that the defendant was holding the bag "kind of loose" at waist level and "like you normally carry something down at [your] side." Officer Gilreath demonstrated on the witness stand that the defendant held the bag loosely and in a manner that the top of the bag was visible between his index finger and thumb.

Officer Gilreath testified that he immediately secured the defendant and put him up against the wall. He stated that he said words to the effect of "What have you got here, a bag of weed?" or "What do we have here? You got a bag of dope?" Officer Gilreath testified that he knew immediately upon seeing the defendant that he had in his hand what appeared to be marijuana.

After placing the defendant against the wall, Officer Gilreath instructed Officer McAllister to handcuff the defendant, as Officer Gilreath continued into the store. Officer Gilreath

4

retained the bag of marijuana as the defendant was patted down by the uniformed officer. Officer Gilreath testified that during the patdown, Officer McAllister found a large bag of crack cocaine in the defendant's jacket pocket.

The next person to testify at the suppression hearing was the defendant. Before testifying, the defendant was advised of his right against self-incrimination and stated that he understood his rights. The defendant was provided an exemplar, comprised of balled-up tissue, which the government conceded was the approximate size of the bag of marijuana found in the defendant's hand. When asked to demonstrate how he was holding the bag of marijuana, the defendant showed a closed fist around the tissue, with no tissue showing. The defendant testified that the first thing that Officer Gilreath asked upon seeing him in the doorway was what the defendant had in his hand. The defendant testified that Officer Gilreath repeated that question multiple times. The defendant further testified that if Officer Gilreath had already known what was in the defendant's hand, Officer Gilreath would have told him to drop the drugs instead of asking him what he had in his hand.

The last witness to testify at the suppression hearing was Special Agent Mickey R. Nocera of the FBI. Special Agent Nocera has been employed by the FBI for over ten years. He is presently assigned to the violent crime squad. On November 7, 2006, Special Agent Nocera was working with Officer Gilreath. The officers were on their way to East Knoxville and were traveling on Martin Luther King Avenue at approximately 4:00 p.m. when they passed the subject business and noticed that it had reopened. Special Agent Nocera testified that they asked a uniformed police officer who was parked at the nearby Metro Village grocery store to accompany them on a check of the business. Special Agent Nocera that he was immediately behind Officer Gilreath when they

5

entered the door of the business. He testified that as Officer Gilreath began to open the door, the door opened, and Officer Gilreath and the defendant bumped into each other. Special Agent Nocera testified that he immediately looked at the defendant's hands and noticed a green leafy substances in a white bag sticking out of the defendant's hand. He testified that Officer Gilreath also noticed the bag and said in a sarcastic tone something to the effect of "What have we got here? What's in your hand?" Special Agent Nocera testified that Officer Gilreath put the defendant up against the wall and passed him off to the uniformed officer.

On cross-examination, Special Agent Nocera admitted that there was nothing in the FBI Form 302 about Special Agent Nocera observing marijuana in the defendant's hand. On redirect examination, Special Agent Nocera testified that the Form 302 is actually a summary of the defendant's FBI interview and is not a narrative of Special Agent's Nocera investigation.

### III. POSITIONS OF THE PARTIES

The defendant argues that the officers did not have any reasonable suspicion that crime was afoot or that the defendant was a danger to them, yet proceeded to search the defendant without first questioning him or doing a protective patdown for weapons. The defendant contends that the search did not comply with any exception to the warrant requirement, and therefore the evidence obtained as a result of that search, including the marijuana, crack cocaine, and any statements that he subsequently made, should be suppressed. [Doc. 12].

The government responds [Doc. 18] that the evidence was lawfully obtained and should not be suppressed. Specifically, the government contends that the officers could lawfully approach the defendant and ask questions without violating the Fourth Amendment; that the officers

in this case had reasonable suspicion that criminal activity was afoot and therefore properly could conduct a Terry stop of the defendant; and finally, that the marijuana seized was in plain view, thereby giving the officers probable cause to arrest the defendant and conduct a search subsequent to his arrest.

**IV.    FINDINGS OF FACT**

On November 7, 2006, Officer Gilreath and FBI Special Agent Mickey Nocera were traveling in an unmarked car on Martin Luther King Avenue in East Knoxville. As they passed the 2500 block of Martin Luther King Avenue, which is a high-crime area, Officer Gilreath noticed that the business located at 2525 Martin Luther King Avenue was open again and that people were coming and going out of the business. Officer Gilreath had heard that an individual had opened the business back up and was selling marijuana over the counter. The officers decided to do a business check of the establishment upon their return to the area.

When the officers returned to the 2500 block of Martin Luther King Avenue at approximately 4:00 p.m., they saw people coming in and going out of the business located at 2525 Martin Luther King Avenue. Officer Gilreath drove to a supermarket about a block west of the area, where he noticed a marked police car in the parking lot. He asked the uniformed officer, Officer McAllister, if he would accompany Gilreath and Nocera, who were both in plainclothes, to conduct a business check.

The three officers returned to the 2500 block of Martin Luther King Avenue. The business located at 2525 Martin Luther King Avenue is a glass-front business with dark tinted windows that prevented the officers from seeing inside the building. A sign outside of the business

7

indicated that it was a game room. There were three vehicles parked in front of the establishment at the time. It appeared to Officer Gilreath to be an ongoing public business, as the business was located in a commercial zone and people were coming and going out of the door.

Officer Gilreath parked in the front of Bates Barber Shop, which is located in the building next to the building where the 2525 business was located. He then went across a small alley and around the fence, followed by Special Agent Nocera and Officer McAllister, and approached the business located at 2525. As Officer Gilreath started to push the door open and step in the business, he noticed a huge plume of marijuana smoke coming out of the door. He was then immediately confronted with the defendant, who was coming across the threshold of the door. The defendant appeared to be surprised. Both Officer Gilreath and Special Agent Nocera looked at the defendant's hands and observed a small bag of marijuana in his right hand. The defendant was holding the bag like a baseball, with three fingers and his thumb wrapped loosely around the bag.

Officer Gilreath immediately secured the defendant and put him up against the wall. He said in a sarcastic tone words to the effect of "What have you got here, a bag of weed?" or "What do we have here? You got a bag of dope?" Both officers knew immediately upon seeing the defendant that the defendant had in his hand what appeared to be marijuana.

After placing the defendant against the wall, Officer Gilreath instructed Officer McAllister to handcuff the defendant, as Officer Gilreath continued into the store. Officer Gilreath retained the bag of marijuana as the defendant was patted down by the uniformed officer. During the patdown, Officer McAllister found a large bag of crack cocaine in the defendant's jacket pocket.

## V. ANALYSIS

A warrantless arrest, as here, is justified if the officer has probable cause to believe that a felony has been or is being committed by the defendant based on the totality of the circumstances. See Illinois v. Gates, 462 U.S. 213, 230-31 (1983); United States v. Watson, 423 U.S. 411, 417 (1976). A warrantless arrest for probable cause is also permissible with regard to a misdemeanor. Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001). Probable cause is defined as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." United States v. Padro, 52 F.3d 120, 122-23 (6th Cir. 1995) (quoting United States v. Bennett, 905 F.2d 931, 934 (6th Cir. 1990)).

Probable cause, determined under the totality of all the circumstances, is justified in this case, as the defendant was observed exiting the business located at 2525 Martin Luther King Avenue holding a small bag of marijuana in his right hand. Although the defendant testified that the bag of marijuana was entirely concealed by his hand, the Court credits the testimony of Officer Gilreath and Special Agent Nocera, who both testified that they observed in plain view the small bag of marijuana in the defendant's hand.[2] "Under ordinary circumstances, the plain view exception permits the warrantless seizure of an object provided that (1) the officer is lawfully positioned in a place from which the object can be plainly viewed; (2) the incriminating character of the object is immediately apparent; and, (3) the officer has a lawful right of access to the object itself." United States v. Bishop, 338 F.3d 623, 626 (6th Cir. 2003). In the present case, the Court finds that the officers had a right to be on the premises. The business located at 2525 Martin Luther King Avenue

---

[2]Moreover, while Officer Gilreath may have repeatedly asked the defendant what he had in his hand, the Court credits the testimony of Special Agent Nocera that Officer Gilreath's questions were posed in a sarcastic tone.

was in a commercial zone, had a sign out front indicating that it was a game room, and appeared to the officers to be open for business. Accordingly, the officers' actions in entering the business for the purposes of conducting a business check was not a search within the meaning of the Fourth Amendment. See Autoworld Specialty Cars, Inc. v. United States, 815 F.2d 385, 388 (6th Cir. 1987) (finding officers' examination of vehicles publicly displayed in defendant's showroom did not violate Fourth Amendment); see also Maryland v. Macon, 472 U.S. 463, 469 (1985) (finding no reasonable expectation of privacy in areas of store where public was invited to enter and conduct business). Furthermore, the small bag in the defendant's right hand was plainly visible to both Officer Gilreath and Special Agent Nocera, and it was immediately apparent to both officers that the substance in the bag appeared to be marijuana. For these reasons, the Court finds that this was a valid warrantless arrest and was justified by virtue of the officers having probable cause to believe that the defendant was in possession of marijuana.[3] As such, the bag of crack of cocaine found in the defendant's jacket pocket during the search incident to his arrest was the fruit of a legitimate valid arrest and is therefore admissible. See Chimel v. California, 395 U.S. 752, 762-63 (1969).

---

[3]Because the Court finds that the officers had probable cause to arrest the defendant under the plain view exception, the Court need not address the government's contention that the officers also had reasonable suspicion to conduct a Terry stop of the defendant.

## VI.  CONCLUSION

In summary, the Court finds that the warrantless search of the defendant did not violate the Fourth Amendment because the officers observed the defendant holding a small bag of marijuana in plain view, which gave the officers probable cause to arrest the defendant. Accordingly, the search of the defendant, which revealed the bag of crack cocaine, was lawfully made pursuant to his arrest. Accordingly, it is hereby **RECOMMENDED**[4] that the defendant's Motion to Suppress [Doc. 12] be **DENIED**.

Respectfully submitted,

   s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[4]Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see also Thomas v. Arn, 474 U.S. 140 (1985) (providing that failure to file objections in compliance with the ten-day time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).